IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE C. SUTTON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>V. MOSER, WARDEN, FCI LORETTO, )<br>)<br>Respondent. ) | Civil Action No. 2:19-cv-210<br><br>Magistrate Judge Patricia L. Dodge |

## MEMORANDUM

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 3) filed by federal prisoner Gene C. Sutton ("Petitioner") under 28 U.S.C. § 2241 in which he challenges the manner in which the Federal Bureau of Prison ("BOP") is carrying out his sentence. For the reasons set forth below, the Court will dismiss the petition.

**I.    Background**

On November 17, 2009, Petitioner was sentenced by the United States District Court for the Central District of Illinois to 180 months of imprisonment, plus an additional five years of supervised release. At the present time, he is serving that sentence at FCI Loretto, which is located within the territorial boundaries of this Court.

**1.    Good Conduct Time**

The BOP is the agency responsible for implementing and applying federal law concerning the computation of federal sentences. See, e.g., United States v. Wilson, 503 U.S. 329 (1992). Section 3624(b) of Title 18 governs the calculation of Good Conduct Time ("GCT") credits for federal inmates. On December 28, 2018, Congress passed the First Step Act of 2018

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

("First Step Act" or the "Act"), Pub. L. No. 115-391, 132 Stat. 5194. Among other things, § 102 of the First Step Act amended 18 U.S.C. § 3624(b). As Respondent explains, the practical effect of the amendment is that inmates will receive an additional seven days of GCT per year spent in prison when compared to what they would have received under the pre-First Step Act statute. (ECF No. 19 at 5-6). The BOP did not immediately recalculate inmates' GCT because after the passage of the First Step Act because, at § 102(b)(2), the Act states:

> EFEECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of Chapter 229 of title 18 United States Code, as added by section 101(a) of this Act.

Section 101(a) of First Step Act provides that the "risk and needs assessment system" be enacted "[n]ot later than 210 days after" the law's enactment, *i.e.*, by July 19, 2019.

Under pre-First Step Act law, the BOP calculated Petitioner's projected release date to be April 24, 2020, assuming that he received all the GCT available to him (which, at that time, was a total of 598 days of GCT). (ECF No. 19 at 2-3). When Petitioner filed his habeas petition with this Court, the BOP had not yet recalculated his GCT and projected released date under the First Step Act because the Attorney General's risk and needs assessment had not been issued. (Id. at 6, 10-12). Petitioner claimed that the BOP violated his right to due process by failing to give immediate effect to the First Step Act's amendment to § 3624(b). In the brief he filed contemporaneously with the habeas petition, he explained that he was seeking an order from the Court directing the BOP to immediately recalculate his GTC under the First Step Act. (ECF No. 4 at 10-11).

    2.    **Prerelease Transfer to a Residential Reentry Center or Home Confinement**

Section 3624(c) of Title 18, as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (April 9, 2008), governs the amount of time the BOP can, in its

discretion, "prerelease" inmates to a Residential Reentry Center ("RRC")[2] or home confinement as they approach the end of their sentences. It provides that the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1). It also provides that the BOP's "authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Id., § 3624(c)(2). The BOP must consider prerelease placement on an individual basis and in a manner consistent with 18 U.S.C. § 3621(b) (which outlines five factors for the BOP to weigh in determining where to place an inmate).[3] See id., § 3624(c)(6); 28 C.F.R. § 570.22.

On October 15, 2018, Petitioner met with his Unit Team to discuss a plan for his prerelease. (Resp's Ex. 1d, ECF No. 19-5 at 2-5). On January 7, 2019, FCI Loretto recommended that Petitioner be prereleased to an RRC for 151-180 days. (Resp's Ex. 1e, ECF No. 19-6 at 2-3). The BOP approved its recommendation. When Petitioner filed his habeas petition with this Court, he was scheduled to be transferred to an RRC on October 29, 2019. (Resp's Ex. 1f, ECF No. 19-7 at 2). Petitioner claimed that FCI Loretto staff did not properly consider § 3621(b)'s factors during his prerelease placement evaluation. (ECF No. 3 at 4; ECF No. 4 at 5). He also alleged that a case manager impermissibly considered his race as a factor. (ECF No. 4 at 5-6). As

---

[2] RRCs were formerly known as a halfway house or community correction centers.

[3] Section 3621(b) requires that the BOP consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and, (5) any pertinent policy statement by the Sentencing Commission. 18 U.S.C. § 3621(b)(1)-(5).

relief, he sought an order from this Court directing the BOP to reconsider him for the maximum allowable RRC time and instructing it that it may not consider his race and must "show [him] how the five factors pursuant to [§]3621(b) determined his eligibility for up to 180 days." (Id. at 10-11).

### 3. Subsequent Relevant Events

On June 7, 2019, which was before Respondent filed the Answer, Petitioner filed a combined Supplemental Brief and an Emergency Motion for Immediate Release to Home Confinement. (ECF No. 16). He contended that now the Court should direct the BOP to prerelease him to home confinement, in accordance with its authority under § 3624(c)(2), because by mid-June 2019 he would be within six months of his soon-to-be-recalculated release date.

On June 12, 2019, Respondent filed the Answer (ECF No. 19) and asserted that the Court should dismiss the petition because, *inter alia*, Petitioner did not exhaust his administrative remedies. Next, on June 20, 2019, Petitioner notified the Court that on June 13, 2019, the BOP had recalculated his GCT under the First Step Act and his current projected release date is January 26, 2020. (ECF No. 20). Once again, he requested that the Court order the BOP to immediately prerelease him to home confinement.

On June 24, 2019, Petitioner filed his Reply to Respondent's Answer. (ECF No. 21). He acknowledged that his First Step Act claim is moot. As for his remaining claim pertaining to the BOP's prerelease determination under § 3624(c), Petitioner admitted that he did not exhaust his administrative remedies with respect to it. He argued that he should be excused from the exhaustion requirement because he cannot complete the administrative review process in time for him to receive the relief he seeks.

4

**II.     Discussion**

Section 2241 provides, in relevant part, that "[t]he writ of habeas corpus shall not extend to a prisoner unless…[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). It confers subject matter jurisdiction upon a federal prisoner's custodial court to hear challenges to the BOP's "execution of" the prisoner's sentence. See, e.g., Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 243 (3d Cir. 2005) (defining "execution of" the sentence to mean "to 'put into effect' or 'carry out.'"); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).

In order to obtain federal habeas relief under § 2241, a federal prisoner ordinarily must first have exhausted the BOP's administrative remedy procedure,[4] which is set forth at 28 C.F.R. § 542.10 *et seq.* See, e.g., Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012) (citing Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)). The exhaustion requirement promotes the important goals of: (1) providing the BOP with the opportunity to correct its own errors before the federal court becomes involved, thus fostering administrative autonomy; (2) permitting the BOP to grant the relief requested if such relief is warranted, which conserves judicial resources; and, (3) allowing the BOP the opportunity to develop a factual record and apply its expertise, which facilitates judicial review in the event such review is required. Moscato, 98 F.3d at 761-62.

A habeas court may excuse a federal prisoner from the exhaustion requirement when it is shown that exhaustion would be "futile" and the goals of the exhaustion doctrine would not be promoted, such as "where the issue presented involves only statutory construction[,]" Vasquez,

---

[4] In the Answer, Respondent asserted that the Court does not have jurisdiction because Petitioner did not exhaust his administrative remedies. That is incorrect. The requirement that a federal prisoner exhaust his administrative remedies is not a jurisdictional requirement and, as explained herein, in certain circumstances a federal prisoner is excused from having to pursue his administrative remedies before he seeks § 2241 habeas relief.

684 F.3d at 433-34 (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981), or when the prisoner is challenging the legality of a BOP regulation, Woodall, 432 F.3d at 239 n.2. For example, in Woodall, a federal prisoner challenged the validity of BOP regulations that at the time limited an inmate's placement in a halfway house to the lesser of ten percent of the inmate's total sentence or six months (28 C.F.R. §§ 570.20-21 (2005)). The petitioner did not exhaust his administrative remedies and the district court held that he did not have to, explaining that "exhaustion of administrative remedies is not required where exhaustion would not promote" the goals of the doctrine. Woodall v. Federal Bureau of Prisons, No. 05-1542, 2005 WL 1705777, *6 (D.N.J. July 20, 2005). It concluded:

> Here, it does not appear that there is any need to develop a factual record. Nor does this matter require application of the agency's particular expertise. [The petitioner] does not challenge the application of the BOP's ten-percent rule to him, but challenges whether the ten-percent rule legally implements the statute pursuant to which it was promulgated. This is a question within the expertise of courts [under Chevron]. Accordingly, the purposes of the exhaustion requirement would not be served by requiring [the petitioner] to exhaust his administrative remedies.

Id. The Court of Appeals affirmed the district court's decision on that issue, explaining that because "the purposes of exhaustion would not be served here by requiring [the petitioner] to exhaust his administrative remedies[,]" he was excused from the requirement. Woodall, 432 F.3d at 239 n.2.

Since the BOP recently recalculated Petitioner's GCT under the First Step Act, Petitioner's only remaining challenge is to the BOP's discretionary prerelease decisions under § 3624(c). He is not challenging the legality of BOP regulations or presenting an issue of statutory construction that might justify excusing him from the exhaustion requirement. Petitioner argues that he should not have to exhaust his administrative remedies because he believes that he will be released before the process is completed. He did not direct the Court to

6

any decision from the Court of Appeals in which it held that a federal prisoner may be excused from the exhaustion requirement on that ground. Additionally, district courts within the Third Circuit have repeatedly rejected the argument that a federal prisoner can be excused from the exhaustion requirement simply because he is approaching his projected release date and may not finish his administrative appeal before a potential habeas claim would become moot. See, e.g., Allah v. Rechtenwald, No. 15-cv-267, 2016 WL 6081524, *3 (W.D. Pa. Aug. 19, 2016) (Paradise Baxter, Mag. J.) (citing cases), *Report and Recommendation adopted by*, 2016 WL 6080363 (W.D. Pa. Oct. 17, 2016) (Rothstein, J.). Therefore, exhaustion is required in this case and Petitioner is not excused from complying with that requirement.

**III. Conclusion**

For the foregoing reasons, the Court will dismiss the Petition for a Writ of Habeas Corpus (ECF No. 3) and deny Petitioner's Emergency Motion for Immediate Release to Home Confinement (ECF No. 16) because he has not exhausted his administrative remedies.

An appropriate Order follows.[5]

Date: July 1, 2019

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

---

[5] 28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the dismissal of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by Gonzalez v. Thaler, 565 U.S. 134 (2012). Accordingly, the Court makes no certificate of appealability determination in this matter.